# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-2324

_____

National Federation of the Blind of     *
Arkansas, Inc.; Larry H. Wayland,     *
    *
     Plaintiffs - Appellants,     *
    *   Appeal from the United States
   v.     *   District Court for the
    *   Eastern District of Arkansas.
Mark Pryor, Attorney General of the     *
State of Arkansas,     *
    *
     Defendant - Appellee.     *

_____

Submitted:  February 14, 2001

Filed:  July 31, 2001

_____

Before LOKEN and BYE, Circuit Judges, and STROM,* District Judge.

_____

LOKEN, Circuit Judge.

This is a facial challenge to the constitutionality of section 4-99-201 of the Arkansas Code by the National Federation of the Blind of Arkansas and Larry Wayland, a blind Arkansas resident. For convenience, we will refer to plaintiffs collectively as the NFBA. The statute first requires that a person placing a telephone

_____

*The HONORABLE LYLE E. STROM, United States District Judge for the District of Nebraska, sitting by designation.

call to an Arkansas resident to solicit a charitable contribution or to offer any commercial product or service must identify the caller and the organization on whose behalf the call is being made, state the purpose of the call, and briefly describe any product or service being offered. ARK. CODE ANN. § 4-99-201(a)(1). That provision is not at issue. The challenge is to the following subsection:

> (2) If the person receiving the telephone call indicates that he or she does not want to hear about the charity, goods, or services, the caller shall not attempt to provide additional information during that conversation about the charity, goods, or services.

A violation of subsection (a)(2) is a Class A misdemeanor and an unfair and deceptive act or practice for purposes of the Arkansas Deceptive Trade Practices Act. See ARK. CODE ANN. §§ 4-99-201(b) & (c)(1); 4-88-101 *et seq.*

The NFBA plaintiffs are an Arkansas charity that solicits contributions and a blind individual who wishes to be solicited without government interference. They allege that subsection (a)(2) violates their free speech rights under the First Amendment and their Fourteenth Amendment right to equal protection of the laws by restricting charitable solicitation activity. The district court[1] granted the State's motion to dismiss, concluding that the statute is constitutional on its face. The NFBA appeals. We affirm.

The State argues that the NFBA's First Amendment claims were properly dismissed because subsection (a)(2) "does not regulate speech," it merely protects the privacy rights of individuals in their homes. We disagree. The statute is *intended* to protect the privacy rights of unwilling listeners, but it does so by a government prohibition on further speech. The NFBA correctly notes that the First Amendment

---

[1]The HONORABLE JAMES M. MOODY, United States District Judge for the Eastern District of Arkansas.

protects rigorous debate and the exchange of conflicting ideas, which must include a speaker's opportunity to persuade a reluctant listener.  See Hill v. Colorado, 120 S. Ct. 2480, 2489 (2000) ("The  right to free speech, of course, includes the right to attempt to persuade others to change their views.").  When government cuts off debate by decreeing that a dialog must end, it is regulating speech.  See Riley v. National Fed'n of the Blind of N.C., 487 U.S. 781, 796-97 (1988) ("compelled silence" is subject to First Amendment review).  Thus, the statute's prohibition may be valid, but only if it withstands First Amendment scrutiny.

A.  The Supreme Court has repeatedly held that charity fund-raising involves speech that is fully protected by the First Amendment.  See Riley, 487 U.S. at 787-88; Village of Schaumburg v. Citizens for a Better Env't, 444 U.S. 620, 633 (1980).  A government regulation that directly and substantially limits charitable solicitation activity cannot be sustained unless (i) "it serves a sufficiently strong, subordinating interest that the [State] is entitled to protect," and (ii) is narrowly drawn to serve that interest "without unnecessarily interfering with First Amendment freedoms."  Secretary of State of Md. v. Joseph H. Munson Co., 467 U.S. 947, 960-61 (1984), quoting Village of Schaumburg, 444 U.S. at 636-37.[2]

Subsection (a)(2) directly limits the solicitation activity of charities, but only in a particular place and manner -- telephone calls to unwilling listeners in their homes. "[T]he government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant

---

[2]Subsection (a)(2) regulates both commercial and charitable solicitations.  Under the Supreme Court's recent commercial speech cases, we suspect the First Amendment analysis would be the same whether the challenge came from a charitable or a commercial solicitor.  See Lorillard Tobacco Co. v. Reilly, 121 S. Ct. 2404, 2421-22 (2001).  But we need not resolve that issue.

governmental interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (quotation omitted). The Munson/Village of Schaumburg standard and the time-place-and-manner standard are obviously very similar. Our task is to apply these First Amendment standards to this facial challenge to subsection (a)(2).[3]

1. The State has a well-recognized interest in protecting a citizen's ability to cut off unwanted communications entering the home. See Hill, 120 S. Ct. at 2490; Carey v. Brown, 447 U.S. 455, 471 (1980); Rowan v. United States Post Office Dep't, 397 U.S. 728, 736-37 (1970). While unwilling listeners in a public forum may have to avoid offensive speech "by averting their eyes" or plugging their ears, Cohen v. California, 403 U.S. 15, 21 (1971), the government may intercede with narrow, carefully targeted limits on speech when it intrudes into the privacy of the home. See Frisby v. Schultz, 487 U.S. 474, 484-85 (1988).

In Rowan, the Court upheld a federal statute that required the Postmaster General, at the request of a householder, to order advertisers to delete that address from their mailing lists. A unanimous Supreme Court "categorically reject[ed] the argument that a vendor has a right under the Constitution or otherwise to send unwanted material into the home of another." 397 U.S. at 738. Thus, Rowan confirms that the State has

---

[3]The NFBA argues that subsection (a)(2) is "content-based," and therefore must withstand strict First Amendment scrutiny, because it regulates only speech that solicits charitable contributions or commercial sales. This argument was rejected in Heffron v. International Society for Krishna Consciousness, Inc., 452 U.S. 640, 649 (1981): a rule is content neutral, the Supreme Court held, if it "applies evenhandedly to all who wish to distribute and sell written materials or to solicit funds." Subsection (a)(2) makes no distinction between charitable and commercial solicitors based on the content of their solicitations. "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." Ward, 491 U.S. at 791.

a legitimate governmental interest in adopting reasonable restrictions to protect its citizens from unwanted telephone calls to their homes.

2. The NFBA argues that subsection (a)(2) is not narrowly tailored to meet this legitimate government interest because residents have other ways to protect themselves from unwanted calls, such as using unlisted phone numbers, screening calls with answering machines or caller-identification devices, or by simply hanging up. This contention is mis-focused. One First Amendment issue is whether the legitimate government interest identified in Rowan is significantly furthered by a statute that only protects those unwilling listeners who lack the resolve to hang up when offensive callers intrude into the privacy of their homes. The marginal benefit of this prohibition may be minimal, but the prohibition is certainly narrow, merely requiring the offending caller to end the call. Our own experience suggests that most households in today's society are plagued by a flood of unwanted telephone solicitations. We are unwilling -- particularly when considering a facial challenge to the statute -- to second-guess the Arkansas Legislature's judgment that many citizens have difficulty dealing with these intrusions and reasonably need the State's help in the form of a statute that imposes on the caller a duty to act in the manner that common courtesy should dictate.

3. Turning to the impact of the statute on free speech, we conclude that subsection (a)(2) does not substantially limit charitable solicitations. Its only impact is to end solicitation calls to unwilling residents who otherwise would not hang up. The statute leaves open ample alternative channels of communication; it does not foreclose other forms of solicitation aimed at those unwilling residents, nor does it bar additional solicitation calls to their homes.[4] Subsection (a)(2) is not a prior restraint on free

---

[4]At oral argument, counsel for the State suggested that subsection (a)(2) applies both to the telephone conversation in progress *and* to any immediate call-back. That interpretation is not obvious from the plain language of the statute, and it would appear to significantly expand the scope of the statute's restriction on protected speech

speech, as the NFBA argues, because it does not prohibit charitable organizations from calling Arkansas residents.  It only imposes a restraint -- requiring the caller to end a conversation -- after the homeowner has expressed an unwillingness to listen.  See Alexander v. United States, 509 U.S. 544, 550 (1993) (a prior restraint is government action forbidding communication before the communication is to occur).

B.  The NFBA next argues that subsection (a)(2) is overbroad because charitable solicitors "will refrain from contacting Arkansas residents entirely rather than risk criminal prosecution."  For a statute to be vulnerable on overbreadth grounds, "there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court."  City Council v. Taxpayers for Vincent, 466 U.S. 789, 801 (1984).  The NFBA's contention that other solicitors will misread the statute as prohibiting them "from contacting Arkansas residents" is rank speculation.  There is simply no evidence in the record that subsection (a)(2) "reaches a substantial number of impermissible applications."  New York v. Ferber, 458 U.S. 747, 771 (1982).

In a related challenge to the statute's facial validity, the NFBA argues that the term "indicates" renders subsection (a)(2) impermissibly vague, leaving telephone solicitors to guess, at the risk of criminal prosecution, when a resident's response requires the solicitor to end the call.  We disagree for three reasons.  First, the statute uses a word well-suited to its task.  The common meaning of "indicates" is "to . . . show or make known with a fair degree of certainty . . . reveal in a fairly clear way . . . ."  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1150. Thus, from a textual standpoint, this situation is much like that in Grayned v. City of Rockford, 408 U.S. 104, 110 (1972), where the Court rejected a vagueness challenge:

---

activity.  We express no view on the constitutionality of that interpretation.

> Condemned to the use of words, we can never expect mathematical certainty from our language. The words of the . . . ordinance are marked by flexibility and reasonable breadth, rather than meticulous specificity, but we think it is clear what the ordinance as a whole prohibits.

(Quotation and citation omitted.) Second, while the NFBA offers up examples of ambiguous responses -- "equivocal words, a sigh, hesitation, or even by a tone of voice" -- the Attorney General of Arkansas interprets the as-yet unenforced statute as requiring an "affirmative and clear indication" that the resident wishes the call to end. This is a reasonable interpretation of subsection (a)(2), and it provides relevant assurance that the statute will not be subject to arbitrary and discriminatory enforcement. See Grayned, 408 U.S. at 108-110. Third, although we have been describing subsection (a)(2) as though it requires the caller to end the call, the prohibition is in fact more narrow: "the caller shall not attempt to provide additional information during that conversation about the charity, goods, or services." Therefore, if the caller considers a response ambiguous, the caller may follow up by asking whether the resident wants to hear about the charity, goods, or services *without risking a violation until the response has been clarified.*

C. Finally, the NFBA argues that subsection (a)(2) violates the Equal Protection Clause of the Fourteenth Amendment because it unreasonably discriminates between small charities that must combine their advocacy and solicitation calls, and large charities that can make separate calls and thereby exercise their advocacy free speech rights unencumbered by this statute's prohibition. We disagree. Because charity solicitors do not have an absolute First Amendment right to press their telephone messages on unwilling households, the statute may draw rational distinctions among speakers who are not similarly situated. See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 54-55 (1983). Here, Arkansas has determined that its residents need greater protection from unwanted telephone calls from charitable and commercial solicitors, than from those who call for other reasons, such as to advocate

on behalf of the blind.  In this context, advocacy callers and those soliciting contributions are not similarly situated, and the State's decision to distinguish between them has not been shown to be irrational.  Thus, subsection (a)(2) does not, on its face, violate the Equal Protection Clause.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.