# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2863

_____

| | | |
|---|---|---|
| Medtronic, Inc., | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| U.S. Xpress, Inc., | * | District of Minnesota. |
| | * | |
| Appellee. | * | |

_____

Submitted: May 14, 2003

Filed: September 5, 2003 (Corrected: 09/19/03)

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Medtronic, Inc. ("Medtronic") filed suit against U.S. Xpress, Inc. ("USX")–a contract carrier–after USX denied its claim for damages to several shipments of medical equipment it sent via the Federal Express Corporation ("FedEx"). USX filed a motion for summary judgment, which the district court[1] granted. The district court determined that USX's denial of Medtronic's claim was proper based on the clear and unambiguous language in FedEx's Service Guide. On appeal, Medtronic argues that

_____

[1] The Honorable James M. Rosenbaum, Chief Judge, United States District Court for the District of Minnesota.

the district court erred because the limited liability provision of the Service Guide is ambiguous and therefore, under Minnesota contract law, should be construed in its favor. Finding no ambiguity, we affirm the district court's grant of summary judgment.

## I. *Background*

In May 2000, Medtronic tendered three bundles of medical equipment to FedEx for shipment from Phoenix, Arizona, to Memphis, Tennessee. Medtronic did not declare a value on the airbills. Thus, according to the terms of the airbills, FedEx's liability for each of the shipments was limited to $100.[2] Medtronic asserts that the actual value of the goods shipped was $439,928.

FedEx tendered Medtronic's medical equipment to USX for truck shipment to Memphis. USX is a shipping company that contracts with FedEx to provide "through shipping services." USX has no direct contractual relationship with FedEx customers. USX picks up trailers–pre-loaded and sealed by FedEx–and drives them to the contracted FedEx destination. When the trailers have reached their destination, FedEx unloads the trailers and routes the FedEx freight within the FedEx system to its ultimate destination.

During the shipment, a fire destroyed the truck and Medtronic's goods, which the truck carried. Medtronic then sued USX seeking damages for the loss. Medtronic's suit alleged that USX is strictly liable for the loss under the Carmack Amendment to the Interstate Commerce Act. 49 U.S.C. §14706. On summary judgment, USX argued its liability could not exceed the limitation of liability amount contained in FedEx's Service Guide because it was a contract carrier.

---

[2] FedEx paid Medtronic for two lost shipments based on this per package limitation. No claim was made for the third shipment.

The district court agreed with USX. The court found that USX was a FedEx contract carrier and that the FedEx Service Guide governed Medtronic's loss. The district court found that the Service Guide specifically limits liability to $100 unless a higher value is declared. Because Medtronic neither declared a higher value nor paid a premium for greater coverage, the district court enforced the contract liability limitation as written. Medtronic now appeals, asserting that the limitation of liability is ambiguous and must be read to exclude contract carriers such as USX.

## II. *Discussion*
### A. *Standard of Review*

Rule 56(c) provides that a motion for summary judgment shall be granted only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When considering a motion for summary judgment, we must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. *Enter. Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996).

The burden of demonstrating that there are no genuine issues of material fact rests on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party has carried its burden, the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik v. County of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995).

### B. *Alleged Ambiguity*

Medtronic argues that an ambiguity in the Service Guide invalidates the Guide's liability limitation provision. The Service Guide governs the relationship

between Medtronic and FedEx.[3] As relevant to this case, the Service Guide states:

> Except with respect to FedEx Express Freight services, our liability with regard to any package is limited to the sum of $100 unless a higher value is declared on the airbill for the package at the time of tender, and a greater charge paid as provided in paragraph (c) below . . .

> * * *

> The terms "we", [sic] "our", [sic] and "FedEx" refer to Federal Express Corporation and its contractors, employees and agents *(but not including cartage agents who shall be considered independent contractors)* and to our subsidiaries and their employees and agents.

*Id.* (emphasis added).

Specifically, Medtronic argues that the parenthetical language, stating "but not including cartage agents who shall be considered independent contractors," excludes not only cartage agents,[4] but also independent contractors–like USX–from the Service Guide liability limits. As Medtronic sees it, this "contradictory" language creates an ambiguity that should be resolved in its favor.

The determination of whether a contract is ambiguous is a question of law. *Boat Dealers' Alliance, Inc. v. Outboard Marine Corp.*, 182 F.3d 619, 620 (8th Cir. 1999). The cardinal purpose of construing a contract is to give effect to the intention

---

[3] FedEx and Medtronic signed a transportation agreement that incorporates by reference the "terms and conditions of the FedEx Service Guide in effect at the time of shipment."

[4] Cartage means to "move by cart." Cartage agents, as "agents" under the Service Guide, provide pick up and delivery service to areas outside of FedEx's primary service area. In contrast, contractors such as USX perform services for FedEx as an extension of and within the FedEx system.

of the parties as expressed in the plain and ordinary language used in drafting the whole contract. *Maurice Sunderland Architecture, Inc. v. Simon*, 5 F.3d 334, 337 (8th Cir. 1993); *Art Goebel, Inc. v. North Suburban Agencies, Inc.*, 567 N.W.2d 511, 515 (Minn. 1997). Intent is not ascertained by interpreting words or phrases in isolation, but rather from a process of synthesis in which meaning is assigned to the words and phrases in accordance with the apparent purpose of the contract as a whole. *Id*. "Divergent interpretations do not necessarily create ambiguity, especially when an interpretation contradicts the language of the contract." *Boat Dealers' Alliance*, 182 F.3d at 620.

The provision that Medtronic contests is not ambiguous. The Service Guide unambiguously states that the liability protection extends to FedEx contractors, employees, and agents. Thus, the phrase "but not including cartage agents who shall be considered independent contractors," merely excludes cartage agents *as* independent contractors, not "cartage agents and independent contractors." If FedEx had intended to create a separate class for contractors like USX, it could have done so by inserting a simple modifier to indicate that intent.

Medtronic argues that the Guide should have excluded cartage agents without assigning them independent contractor status. By so doing, Medtronic asserts, the Guide "re-defines" a cartage agent as an independent contractor. However, this argument does not make sense when we examine the relationship between cartage agents and shippers. *See Mori Seki USA, Inc. v. M.V. Alligator Triumph*, 990 F.2d 444, 448 (9th Cir. 1993) (proper analysis requires examination of the relationship between the customer and the carrier as well as the nature of the services performed).

If an entity such as Medtronic elects to make shipping arrangements (for pick up or delivery) with a cartage agent, then that customer is aware that a cartage agent is involved in the transportation of the shipper's goods because such agents pick up or deliver directly from the customer's place of business. In contrast, FedEx

customers are not always aware that a contractor, such as USX, is involved in the transportation of the goods.

This difference is critical when faced with liability for damaged cargo. FedEx denies all responsibility for service failures as a result of a cartage agent's pick up or delivery, and the customer remains responsible for charges from the cartage agent. However, FedEx continuously retains responsibility for damage incurred by virtue of its contractors' errors. Contractor liability in turn triggers the Service Guide's limited liability provision.

Based on the limited and unique nature of a cartage agent's responsibilities, the Service Guide modifies the term "agent" to exclude cartage agents as independent contractors in relation to the customer. The obvious intent of the language is to further ensure FedEx protection against customer claims in the event a cartage agent operating out of FedEx's primary service area fails to perform. The language of the provision, whether considered by itself or when read in context with the rest of the Service Guide, does not expressly or impliedly contemplate the creation of a separate class of entities. Rather, the use of the term "independent contractors" simply modifies the definition of a certain type of "agent" defined in the Service Guide. "Independent contractor" does not operate to modify "contractor" as used in the provision.

Thus, after assigning meaning to the words and phrases in accordance with the clear purpose of the liability limitation outlined in the FedEx Service Guide, we find no ambiguity and affirm the district court's grant of USX's summary judgment motion.

A true copy.

Attest:

       CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.