FRATERNAL ORDER OF POLICE, North Dakota State Lodge and Veterans of Foreign Wars—Department of North Dakota, Plaintiffs,

v.

Wayne STENEHJEM, in his official capacity as Attorney General of the State of North Dakota, Defendant.

No. CIV. A3–03–74.

United States District Court,
D. North Dakota,
Southeastern Division.

Oct. 17, 2003.

Sidney J. Spaeth, Vogel Law Firm, Fargo, ND, Errol Copilevitz, William Edward Raney, Copilevitz & Canter, LLC, Kansas City, MO, for plaintiffs.

Douglas Alan Bahr, Attorney General's Office Civil Litigation, Bismarck, ND, for defendant.

## MEMORANDUM OPINION AND ORDER

ERICKSON, District Judge.

Before the Court is a motion by Plaintiffs for a preliminary injunction (doc. # 5), a motion by Defendant to dismiss the case (doc. # 12), and a motion by Plaintiffs for judgment as a matter of law (doc. # 18). Both parties have filed briefs on these motions, and the Court heard oral arguments on October 10, 2003.

FACTS

During the 2003 Legislative Session, the North Dakota Legislature passed SB 2255, codified at Chapter 51–28, which prohibits those defined as "telephone solicitors" from calling North Dakota residents who register for a "do-not-call" list. There are several categories of calls that are not considered telephone solicitors. Included in this list is a telephone call made by a volunteer or employee of a charitable organization. The law also requires these volunteers or employees to give their first and last name and the name, address, and telephone number of their charitable organization when they call potential donors.

On July 30, 2003, Plaintiffs filed this lawsuit challenging the constitutionality of Chapter 51–28. Plaintiffs describe the lawsuit as a "facial challenge" to the statute, Compl. at ¶ 1, and part of the relief they request is that the legislation be declared unconstitutional on its face, Compl. at 16.

Plaintiff Fraternal Order of Police, North Dakota State Lodge, is a nonprofit corporation with tax-exempt status under I.R.C. § 501(c)(8). Compl. at ¶ 6. Plaintiff Veterans of Foreign Wars—Department of North Dakota is also a nonprofit corpora-

tion with tax-exempt status under I.R.C. § 501(c)(8). Compl. at ¶ 8. Plaintiffs use people other than volunteers or employees of their organizations to solicit funds for them. Therefore, they are defined as telephone solicitors, and the new law prevents them from calling people on the do-not-call list.

ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may award summary judgment to a party if there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Dico, Inc. v. Amoco Oil Co.*, 340 F.3d 525, 529 (8th Cir.2003). A court views the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party. *Medtronic, Inc. v. U.S. Xpress, Inc.*, 341 F.3d 798, 800 (8th Cir.2003). The moving party bears the burden of demonstrating that there are no genuine issues of material fact. *Id.* If the moving party meets this burden, then the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Id.* Both parties agree that since this case involves the constitutionality of a statute, it may be decided as a matter of law.

## I. Commercial Speech Provisions

■■■ As a preliminary matter, the Court must address a standing issue. Plaintiffs' Complaint states that it is challenging the entire law as unconstitutional. Compl. at 16.[1] "Ordinarily, a party may not facially challenge a law on the ground that it would be unconstitutional if applied to someone else." *SOB, Inc. v. County of Benton*, 317 F.3d 856, 864 (8th Cir.2003) (citing *New York v. Ferber*, 458 U.S. 747,

767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982)). An exception to this rule is the overbreadth doctrine in First Amendment cases. *Id.* However, the overbreadth doctrine does not apply to commercial speech cases. *Bd. of Trs. of State Univ. of New York v. Fox*, 492 U.S. 469, 481, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989).

■■■ Plaintiffs in this case are both charitable organizations; neither is a commercial entity. Therefore, they may not rely on the overbreadth doctrine to challenge the portions of this North Dakota law that regulate commercial speech. *Id.* Even if Plaintiffs had standing, the commercial speech regulations are constitutional.

■■■ The Constitution "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Central Hudson Gas v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). When a law regulates non-misleading commercial speech that concerns a lawful activity, the government may regulate that speech as long as it serves a substantial governmental interest, the regulation directly advances that governmental interest, and the regulation is not more extensive than is necessary to serve that interest. *Central Hudson*, 447 U.S. at 566, 100 S.Ct. 2343.

*In Fed. Trade Comm'n v. Mainstream Mktg. Servs., Inc.*, No. 03–1429, 2003 WL 22293798 (10th Cir. Oct. 7, 2003), the Tenth Circuit applied the Central Hudson test to the Federal Trade Commission (FTC) do-not-call list. In the context of a stay request, the court found that the FTC would likely succeed on the merits because its do-not-call list regulating commercial

---

1. At oral argument, Plaintiffs' counsel stated that they were only challenging the provisions of the law that addressed charities. However, since the Complaint filed also alleges a facial challenge to the entire law, that portion of the Complaint must also be addressed.

speech was constitutional. *Mainstream Mktg.*, 345 F.3d 850, 859–60.

■ Similar to the FTC do-not-call list, North Dakota's law forbids commercial telephone solicitors from calling people who have placed their phone number on the do-not-call list. Defendant asserts that the interest it is seeking to protect is privacy. The legislative history also states that the government was concerned with telemarketing fraud. A state's interest in protecting the "well-being, tranquility, and privacy of the home" is a sufficiently strong, subordinating interest that the government is entitled to protect. *Frisby v. Schultz*, 487 U.S. 474, 484, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988); *see also Rowan v. United States Post Office Dep't*, 397 U.S. 728, 737, 90 S.Ct. 1484, 25 L.Ed.2d 736 (1970). A state's interest in protecting the public from fraud is also a substantial interest. *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 636, 100 S.Ct. 826, 63 L.Ed.2d 73 (1980). The government's asserted interests are substantial. *Mainstream Mktg.*, 345 F.3d 850, 854.

The second and third parts of the Central Hudson test require that there be a "fit between the legislature's ends and the means chosen to accomplish those ends." *Id.* at 854 (quoting *United States v. Edge Broad. Co.*, 509 U.S. 418, 427–28, 113 S.Ct. 2696, 125 L.Ed.2d 345 (1993)). When establishing this reasonable fit, the government must "demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree." *Id.* (quoting *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 486–87, 115 S.Ct. 1585, 131 L.Ed.2d 532 (1995)). To demonstrate that this harm is real, the government may use anecdotes, history, consensus, and simple common sense. *Id.* (citing *Florida Bar v. Went For It, Inc.*, 515 U.S. 618, 628, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995)).

■ Simple common sense indicates that the ringing of the telephone is an intrusion into the tranquility of the home. However, it is not merely the ringing of the phone that is an invasion of privacy; it is also the manner and substance of the call that may be an invasion of privacy. *Id.* at 854. Simple common sense dictates that an unwanted call from a telemarketer would be an invasion of privacy.

The North Dakota Legislature found that many elderly victims in North Dakota have lost $10,000 to $100,000 or more to telemarketing fraud. It is estimated that up to ten percent of the telemarketing firms operating in the United States in 1996 were fraudulent. Nationwide it is estimated that consumers lose an estimated $40 billion each year to telemarketing fraud. *Mainstream Mktg.*, 345 F.3d 850, 857. Based on the ease of proving a violation of do-not-call lists, the legislature found that do-not-call lists deter fraudulent telemarketers.

When determining a reasonable fit, whether a law has an element of private choice in it weighs in favor of a reasonable fit. *Id.* at 859–60. If the commercial regulation affects more than a minute portion of the asserted harms, this also weighs in favor of a reasonable fit. *Id.* In this case, there is an element of private choice because the individual householder decides whether to place his or her phone number on the do-not-call list. N.D. Cent.Code § 51–28–09(1)(a) (2003). Nationwide, complaint statistics are much higher for commercial telemarketing calls than for political or charitable calls. *Mainstream Mktg.*, 345 F.3d 850, 857–58. The great majority of all telemarketing calls are commercial. *Id.* at 859–60.

If an individual elects to sign up for the do-not-call list, the law does not completely ban all commercial speech. For example, it allows your dentist to call you and re-

mind you that it is time for semi-annual teeth cleaning. See N.D. Cent.Code § 51–28–01(7)(b) (stating that a person may call someone on the do-not-call list if they have an established business relationship). Also, a salesperson may call as long as the sale will only be completed at a later-face-to-face meeting between the individual solicitor and the person who made the initial call. N.D. Cent.Code § 51–28–01(7)(e). These exemptions reasonably fit the asserted purposes for the law. One who has an established business relationship with you is less likely to engage in fraud, and the recipient of the call is not likely to view such a call as an invasion of privacy. Requiring a face-to-face meeting to complete the sale also reduces the chance for tele-marketing fraud by creating more time for a purchaser to contemplate the anticipated transaction. While there are some exceptions for commercial speech in this law, the government is not required to ban all commercial speech in order for there to be a reasonable fit. *See Edge Broad.*, 509 U.S. at 434, 113 S.Ct. 2696 (stating that in the commercial speech context, the First Amendment does not require the government to "make progress on every front before it can make progress on any front."). Even with these limited exceptions, this law still restricts the great majority of the commercial telemarketing calls. *Mainstream Mktg.*, at 859–60.

Since there is an element of private choice in this law, this weighs in favor of a reasonable fit. Also, the great majority of the asserted harms are addressed by this law, which weighs in favor of a reasonable fit.

Plaintiffs lack standing to challenge the commercial portions of this law because the overbreadth doctrine does not apply to commercial speech. Even assuming that Plaintiffs had standing, there is a reasonable fit between the law and the substantial harms that it addresses. Therefore,

the provision regulating commercial speech are constitutional.

## II. Charitable Speech Provisions

 Unlike commercial speech, "charity fund-raising involves speech that is fully protected by the First Amendment." *Nat'l Fed'n of the Blind of Arkansas, Inc. v. Pryor*, 258 F.3d 851, 854 (8th Cir.2001) (citing *Riley v. Nat'l Fed'n of the Blind of North Carolina*, 487 U.S. 781, 787–88, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) and *Schaumburg*, 444 U.S. at 633, 100 S.Ct. 826). When analyzing a law that regulates speech, a court must first determine whether the law is content-based or content-neutral. *Cafe Erotica v. Florida Dep't of Transp.*, 830 So.2d 181, 183 (Fla. 1st 2002). If one must necessarily look at the content of the speech to determine whether the law applies, then the law is content-based. *Arkansas Writers' Project Inc. v. Ragland*, 481 U.S. 221, 230, 107 S.Ct. 1722, 95 L.Ed.2d 209 (1987) (stating that since the government official had to look at the type of publication to determine whether the tax applied, the law was content-based). In this case, the law requires charities to use volunteers or employees to make their phone calls. Since one must determine what kind of speech is involved to determine whether this law applies, it is content-based. *Id.* A content-based restriction on speech is presumptively invalid. *Interactive Digital Software Ass'n v. St. Louis County*, 329 F.3d 954, 958 (8th Cir.2003).

In the cases of *Sec'y of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984) and Schaumburg, the Supreme Court laid out a three-part test for analyzing statutes that affect the solicitation of funds for charities. *Heritage Publ'g Co. v. Fishman*, 634 F.Supp. 1489, 1498 (D.Minn. 1986). First a court must determine

whether the statute constitutes a direct and substantial limitation upon free speech. *Munson,* 467 U.S. at 960, 104 S.Ct. 2839; *Schaumburg,* 444 U.S. at 635–36, 100 S.Ct. 826. If the statute does constitute a direct and substantial limitation upon free speech, then it may only be upheld if 1) it serves a sufficiently strong, subordinating interest that the government is entitled to protect and 2) it is narrowly drawn to serve that interest without unnecessarily interfering with First Amendment freedoms. *Munson,* 467 U.S. at 960–61, 104 S.Ct. 2839.

 If the law restricts the manner in which a charity may engage in solicitation activity, it is a direct and substantial limitation upon free speech. *Id.* at 961, 104 S.Ct. 2839. This law prevents charities from hiring professional telemarketers to solicit funds for them. N.D. Cent.Code § 51–28–01(7)(c). It also provides civil penalties for charities who violate the law. N.D. Cent.Code § 51–28–15. Since it restricts the manner in which a charity may engage in solicitation activity, this law imposes a direct and substantial limitation. *Id.*

 Defendant asserts that the interest it is seeking to protect is privacy. A state's interest in protecting the "well-being, tranquility, and privacy of the home" is a compelling interest. *Frisby,* 487 U.S. at 484, 108 S.Ct. 2495; *see also Rowan,* 397 U.S. at 737, 90 S.Ct. 1484. The legislative history also reveals that the legislature was concerned with fraud. Protecting consumers from fraud is also a compelling interest. *Schaumburg,* 444 U.S. at 636, 100 S.Ct. 826.

 In order to satisfy the narrowly-tailored requirement, the law must target and eliminate "no more than the exact source of the evil it seeks to remedy." *Thorburn v. Austin,* 231 F.3d 1114, 1120 (8th Cir.2000). The statute does not have to be the least restrictive means of regula-

tion, but it must further the asserted compelling interests in a manner that would be achieved less effectively without the regulation. *Id.* The narrowly-tailored requirement for charitable speech is a more demanding standard than the reasonable-fit requirement for commercial speech.

 This law is not narrowly tailored as applied to the interest in preventing fraud. *Schaumburg,* 444 U.S. at 637, 100 S.Ct. 826. Instead of a direct prohibition on solicitation by charitable telemarketers, the state's criminal laws on fraudulent misrepresentations directly address this interest. *Id.* Not every professional telemarketer hired by a charity will engage in fraudulent activity, so this law targets and eliminates more "than the exact source of the evil it seeks to remedy." *Thorburn,* 231 F.3d at 1120. Since the state's asserted interest in preventing fraud prohibits more speech than the evil that it is targeting, and there is another effective means for addressing this interest, the law is not narrowly tailored. *Id.*

The government's other asserted interest is to protect the privacy of the home. If a householder registers his or her phone number with the do-not-call list, it only prevents certain types of charitable calls from invading the privacy of the home. Those charities that use volunteers or employees may still call and invade one's privacy. Since the law still allows invasions of privacy by charities, it is not narrowly drawn to serve the interest in protecting privacy. *See Munson,* 467 U.S. at 960–61, 104 S.Ct. 2839 (stating that the statute must be narrowly drawn to serve the asserted interest).

In the legislative history, there are several references to the small portion of money that is retained by some charities who hire telemarketers for solicitation. For example, there was testimony that only 17% of the funds raised go to the

Fraternal Order of Police when it hires telemarketers. If that is a concern of the legislature, then it should consider informing the public of the ways in which their contributions will be spent. *Schaumburg*, 444 U.S. at 637–38, 100 S.Ct. 826. Requiring disclosure of the finances of a charity would "help make contribution decisions more informed while leaving to individual choice the decision whether to contribute to organizations that spend large amounts on salaries and administrative expenses." *Id.* A disclosure regulation which informed the public would address the legislature's concern without running afoul of free speech concerns. *Id.*

Defendant relies heavily on Rowan in its argument that this law, as applied to charitable speech, is constitutional. In Rowan, the law at issue allowed people to inform the Postmaster General of objectionable mailings, and then the Postmaster General would order that mailer to refrain from sending further mail to the named addressee. 397 U.S. at 730, 90 S.Ct. 1484. The key distinction between the law in Rowan and North Dakota's law is that the United States Supreme Court found the mail solicitation law in Rowan to be content-neutral. See 397 U.S. at 737, 90 S.Ct. 1484.

Defendant argues that the law in Rowan could not be content-neutral because it only applied to erotically arousing or sexually provocative mail. See *id.* at 730, 90 S.Ct. 1484. This ignores crucial language in the statute that leaves it within the addressee's "sole discretion" to determine whether the advertisement is "erotically arousing or sexually provocative." *Id.* The Court found that this allowed an addressee to prevent even the mailing of a "dry goods catalog." *Id.* at 737, 90 S.Ct. 1484.

The law in this case leaves only one thing to the sole discretion of the recipient: the choice to place his or her phone number on the do-not-call list. After making that choice, then it is the government's discretion that decides what kinds of calls are not permitted. In the case of charities, the government—not the recipient— has decided that only charities that use volunteers or employees to place the phone calls may call those on the do-not-call list. Unlike Rowan, North Dakota's law does not leave it to the recipient's sole discretion who may not call them, so it is not content-neutral. Another example of a content-neutral regulation can be found in the Pryor case from the Eighth Circuit. See generally 258 F.3d 851. In Pryor, the court analyzed an Arkansas statute that required a caller to hang up if the recipient informed the caller that he did not want to hear about the charity, goods, or services. *Id.* at 854 (quoting Ark.Code Ann. § 4–99–201(a)(2) (2000)). While this law exempted political speech; since it only applied to charities, goods, and services; the Eighth Circuit held that it was content-neutral because it made no distinction between charitable and commercial solicitors based on the content of their solicitations. *Id.* at 855 n. 3. Unlike Arkansas' law, North Dakota's law does not apply uniformly to commercial speech, and it also distinguishes between charitable and commercial solicitors, which makes North Dakota's law content-based.

In order for North Dakota's restriction on charitable speech to be upheld, it must withstand strict scrutiny. Since the law is not narrowly tailored to protect privacy or to protect against consumer fraud, it is an unconstitutional regulation of speech.

### III. Severability

 The last issue for the Court is how to strike the unconstitutional limitation on charitable speech from the rest of the statute. "The severability of the valid portions of a state statute which is otherwise found constitutionally infirm is a matter of

state law." *Kinley Corp. v. Iowa Utils. Bd.*, 999 F.2d 354, 359 (8th Cir.1993) (citations omitted). Section 1–02–20 of the North Dakota Century Code states:

> In the event that any clause, sentence, paragraph, chapter, or other part of any title, is adjudged by any court of competent or final jurisdiction to be invalid, such judgment does not affect, impair, nor invalidate any other clause, sentence, paragraph, chapter, section, or part of such title, but is confined in its operation to the clause, sentence, paragraph, section, or part thereof directly involved in the controversy in which such judgment has been rendered.

■■■ In this case, the only provision of the law that has been rendered invalid is the restriction on charitable speech. This invalid provision is only contained in the language starting with the word "but" in 7(c) of section 51–28–01 of the North Dakota Century Code and ending with the word "organization" in 7(c)(2)(b). Finding these clauses invalid does not require invalidating the remainder of the clause in 7(c) of section 51–28–01 of the North Dakota Century Code. N.D. Cent.Code § 1–02–20.

Now the clause simply reads that calls by or on behalf of a charitable organization are not defined as telephone solicitation. N.D. Cent.Code § 51–28–01(7)(c). The Tenth Circuit has found that the FTC would likely succeed in its argument that drawing a distinction between charitable and commercial speech is constitutional. *Mainstream Mktg.*, 345 F.3d 850, 859–60.[2] Therefore, providing an exemption for charitable speech in North Dakota's law does not render it unconstitutional. *Id.*

At oral argument, Defendant urged this Court to strike the entire text of 7(c) if the charitable speech provisions were found to be unconstitutional. The Court is of the opinion that if the entire text of 7(c) is excised from the law, then the entire statute would likely become unconstitutional. If 7(c) was entirely deleted from the law, it would then allow certain commercial speakers to call those people who have signed up for the do-not-call list, see N.D. Cent.Code § 51–28–01(7)(b) & (e), and it would entirely prohibit charitable solicitors from calling people on the do-not-call list. The solution Defendant urges would prefer commercial speech, which is entitled to lesser protection, over charitable speech, which is entitled to the full protection of the First Amendment. A law which prefers commercial speech over charitable speech is surely not constitutional. By only excising the barest portions of the law which are unconstitutional, the Court has preserved the bulk of the statute.

DECISION

The restrictions placed on charitable speech in Chapter 51–28 of the North Dakota Century Code are unconstitutional. Those provisions, as detailed above, are excised from the law leaving the remainder of Chapter 51–28 intact. Defendant's Motion to Dismiss is DENIED as to Plaintiffs' challenge to the restrictions placed on charitable speech and GRANTED as to the remainder of the Complaint. Plaintiffs' Motion for Judgment on the Pleadings is GRANTED to the extent its arguments apply to the restrictions on charitable speech. Plaintiffs' Motion for a Preliminary Injunction is MOOT.

IT IS SO ORDERED.

---

**2.** For further analysis, see the discussion in section I of this opinion.