Dean **SYMINGTON**, Plaintiff,

v.

**DAISY MANUFACTURING COM-PANY, INC., a corporation,**
Defendant.

No. A2–02–140.

United States District Court,
D. North Dakota,
Northeastern Division.

Feb. 23, 2005.

Kenneth F. Johannson, Johannson Rust Fagerlund Yon & Stock, P.A., Crookston, MN, for Plaintiff.

Duane H. Ilvedson, Nilles, Hansen & Davies, Ltd., Fargo, ND, for Defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

ERICKSON, District Judge.

Before the Court is Defendant's Motion for Summary Judgment (doc. # 21). Plaintiff filed a brief in opposition (doc. # 27).

### SUMMARY OF HOLDING

The Court accepts Plaintiff's expert witness supplemental report because the testimony would be admissible at trial and alternatively finds no prejudice to Defendant in accepting this report in affidavit form even though the affidavit version was filed seven days late. The Court finds that Plaintiff's expert has sufficient experience, training, and education to qualify as an expert on the airgun in this case; his testimony will assist the trier of fact; and his opinion is reliable.

North Dakota's modified comparative fault laws differ from those of other states. North Dakota requires the trier of fact to compare an intentional tortfeasor's conduct with a product liability tortfeasor's conduct when assigning liability for an injury. Therefore, the fault of the shooter in this case must be compared with any alleged fault of the manufacturer.

### BACKGROUND

On December 3, 2001, the plaintiff, Dean Symington, was at his parents' house with his friend, Steve Logan. They were using a Model 856 Daisy Powerline .177 caliber pellet BB gun to shoot at paper bags. They didn't have any BBs or pellets, so they were just shooting air at the paper bags. (Dean Symington Depo. at 45–46) At some point, Dean used the phone, and Steve continued to pump the gun and fire air several times at a paper bag. (*Id.* at 34; Logan Depo. at 39) Apparently impatient with Dean because he would not get off the phone, Steve aimed the gun at him. (Dean Symington Depo. at 40) Without loading any ammunition, Steve pulled the trigger, and a projectile from the gun entered Dean's right eye. As a result of the injury, the eye was removed.

Plaintiff hired David Townshend to analyze the condition of the gun. Townshend has been qualified as an expert on airgun operation and design over thirty times in state and federal courts. Townshend concluded that the Model 856 Daisy Powerline .177 caliber pellet BB gun was defective for a number of reasons, including a design flaw that allowed BBs to become lodged in the magazine of the gun, which gave the appearance that the gun was empty. (Def.Mot.Summ. J. Ex. 4)

At his deposition, Townshend saw for the first time CT X-rays of Dean's head, which showed a pellet, instead of a BB, lodged in the back of the right eye socket. (Townshend Depo. at 65 & Ex. 6) At that time, Townshend was unable to express any opinion whether he thought the gun was defective now that he knew a pellet had caused the injury. (*Id.* at 67–68) After this deposition, Townshend supplemented his initial expert report with his opinion that the gun was defective because it allowed a pellet to enter and exit the "BB feed hole." (Pl. Br. Opp'n Mot. Summ. J. Ex. 6)

### ANALYSIS

Rule 56(c) of the Federal Rules of Civil Procedure provides that a court may award summary judgment to a party if there exists no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Dico, Inc. v. Amoco Oil Co.,* 340 F.3d 525, 529 (8th Cir.2003). A court views the evidence and the inferences that may be reasonably

drawn from the evidence in the light most favorable to the non-moving party. *Medtronic, Inc. v. U.S. Xpress, Inc.*, 341 F.3d 798, 800 (8th Cir.2003). The moving party bears the burden of demonstrating that there are no genuine issues of material fact. *Id.* If the moving party meets this burden, then the non-moving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Id.* If no reasonable juror could return a verdict in favor of the non-moving party based on the evidence presented, summary judgment is appropriate. *Meterlogic, Inc. v. KLT, Inc.*, 368 F.3d 1017, 1018 (8th Cir.2004).

## I. Expert Opinion

Before reaching Defendant's substantive arguments regarding Plaintiff's expert witness, the Court will address Defendant's technical arguments. Defendant argues that the Court may not consider Townshend's October 21, 2004 expert report because it is not in affidavit form. Defendant also argues that the Court may not consider this same expert report in affidavit form, submitted November 22, 2004, because it is untimely.

■ When responding to a motion for summary judgment, the adverse party may rely on information given in affidavit form or "as otherwise provided in [Rule 56]. . . ." Fed. R. Civ. Pro. 56(e). To determine whether there is a genuine issue of material fact, a district court may rely on any information that would be available as admissible evidence by the time of trial. *Fin. Timing Publ'ns, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 942 (8th Cir.1990). Since Townshend will be available to testify at trial, the Court can consider his October 21 report even though it was not in affidavit form initially. *Id.*

■ The decision whether to consider documents that are untimely filed rests within the sound discretion of the district court. *Williams v. Thomson Corp.*, 383 F.3d 789, 791 (8th Cir.2004). Plaintiff had until November 15 to file a response to the motion for summary judgment. Seven days later, after Defendant objected, he filed Townshend's amended report in affidavit form. However, Defendant had the substance of that report prior to November 15. The November 22 filing merely placed this same information in affidavit form. Therefore, Defendant was not prejudiced by this late filing. Under these circumstances, the Court will consider the November 22 expert report despite its late filing.

Finally, Defendant objects to this supplemental report by arguing that this is an "eleventh hour" attempt to contradict Townshend's deposition testimony. *See Am. Airlines, Inc. v. KLM Royal Dutch Airlines, Inc.*, 114 F.3d 108, 111–12 (8th Cir.1997) (disregarding the expert witness' later testimony that four of the five elements of American's yield management model were trade secrets when he had earlier testified that only the unique combination of these five elements was a trade secret). Defendant reads too much into Townshend's deposition. Townshend's initial opinion was based purely on the theory that a BB had injured Plaintiff. He had not done any analysis before his deposition as to whether there was any defect in the gun related to pellets. Therefore, when Townshend testified that he would probably not be at the deposition testifying against Daisy if a pellet caused the injury, his answer makes sense since that wasn't the reason Plaintiff hired him. Defense counsel's follow-up question about whether the shooter should take the entire fault for the accident is a legal issue that the Court will address later.

■ Nowhere in that deposition does Townshend testify that the gun is not defective with regard to firing pellets. Of

course he couldn't make any conclusion about that since he had not analyzed the gun from that perspective yet. Townshend's supplemental report does not contradict his deposition testimony, so it can't be considered an "eleventh hour" attempt to avoid summary judgment. *Cf. Am. Airlines,* 114 F.3d at 111–12 (finding the expert's subsequent testimony did contradict his earlier testimony). The Court will consider this supplemental report when analyzing Defendant's *Daubert* arguments.

First Defendant argues that summary judgment should be granted because Plaintiff has not offered any expert testimony that a design defect caused the pellet to injure Dean. This motion was made before Plaintiff submitted Townshend's supplemental report. The supplemental report states that there is a design defect in the Daisy 856 airgun because it allows a pellet to enter and exit the "BB feed hole." This new opinion makes this issue moot.

■ Defendant next argues that Townshend is not qualified to testify as an expert. Rule 702 of the Federal Rules of Evidence provides the standard for the admission of expert testimony. *Craftsmen Limousine, Inc. v. Ford Motor Co.,* 363 F.3d 761, 776 (8th Cir.2004). The rule states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, or experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. A district court has great latitude in determining whether expert testimony meets the reliability requi-

sites of this rule. *Craftsmen Limousine,* 363 F.3d at 776. In determining reliability, a district court may evaluate one or all of the following factors: "(1) whether the theory or technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether the theory or technique has a known or potential error rate and standards controlling the technique's operation; and (4) whether the theory or technique is generally accepted in the scientific community." *Id.* at 776–77 (citing *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592–95, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993)). "Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Children's Broad. Corp. v. Walt Disney Co.,* 357 F.3d 860, 865 (8th Cir.2004) (citations omitted).

■ Townshend worked for the Michigan State Police for twenty-five years. For twenty of those years he worked in the state's Police Crime Laboratory as a firearms/toolmark examiner. He has examined thousands of firearms to determine how they function. He has testified in court hundreds of times about the operation of a firearm as it relates to whether a death was a homicide or an accident.

He has taken armor courses from numerous firearm manufacturers, and this training included instruction in the assembly, disassembly, and testing of firearms. Since 1986 he has given expert opinions in over thirty cases in state and federal court about the operation and design of airguns. He personally owns between 125 and 150 airguns, and between 75 to 80 of these were manufactured by Daisy. He has performed numerous tests on Daisy Power Line air rifles. The Court finds that Townshend's experience, training, and ed-

ucation are sufficient to qualify him as an expert in this case. Fed.R.Evid. 702.

■ One of Plaintiff's theories of recovery is that there was a design defect in the Daisy 856 airgun. Whether a design defect exists in an airgun is not an issue that would be readily obvious to a jury. Therefore, Townshend's opinion will assist the jury in understanding the evidence.

■ Townshend's opinion about the design defect is based on observation of the mechanics of the airgun. In his report, he describes how pellets enter the gun and how this can lead to one becoming lodged in the BB feed hole. All of this information is based on observing the travel path of ammunition. This method is reliable, and Townshend has applied it appropriately to this case. Since Townshend satisfies the Rule 702 standard, he will be permitted to give his opinions at trial.

## II. Superseding, Intervening Cause

Defendant argues that summary judgment is appropriate because Steve's act of pointing the gun at Dean and then firing it was a superseding, intervening cause that broke the causal link to the alleged defect. Several courts from other jurisdictions have concluded that the act of the person who fired the gun is a superseding, intervening cause that relieves the gun manufacturer of liability. *See Rodriguez v. Glock, Inc.*, 28 F.Supp.2d 1064, 1073 (N.D.Ill.1998); *Eichstedt v. Lakefield Arms Ltd.*, 849 F.Supp. 1287, 1292 (E.D.Wis.1994); *Raines v. Colt Indus.*, 757 F.Supp. 819, 826 (E.D.Mich.1991). While the reasoning of these courts is persuasive, it is not the law in North Dakota.

"When two or more parties are found to have contributed to the injury, the liability of each party is several only, and is not joint, and each party is liable only for the amount of damages attributable to the percentage of fault of that party...." N.D. Cent.Code § 32–03.2–02. "Fault" means "acts or omissions that are in any measure negligent or reckless towards the person or property of the actor or others, or that subject a person to tort liability." N.D. Cent.Code § 32–03.2–01. When determining whether there was "fault" on the part of two or more parties, "fault" also means absolute liability, failure to warn, willful conduct, assumption of risk, misuse of product, failure to avoid injury, and product liability. N.D. Cent.Code. § 32–03.2–02.

These modified comparative fault provisions significantly changed tort liability in North Dakota. *Rodenburg v. Fargo–Moorhead YMCA*, 632 N.W.2d 407, 417 (N.D.2001) (citing *Haff v. Hettich*, 593 N.W.2d 383, 388 (N.D.1999)). North Dakota law now includes intentional acts under the definition of fault. *Id.* (quoting *Champagne v. United States*, 513 N.W.2d 75, 79 (N.D.1994)). Therefore, a negligent tortfeasor's conduct will be compared to an intentional tortfeasor's conduct. *Id.* In that same vein, a product liability tortfeasor's conduct will be compared to an intentional tortfeasor's conduct. N.D. Cent. Code § 32–03.2–02.

In *Rodenburg*, Clifton Rodenburg was injured when William Hart shot him with a .357 magnum. 632 N.W.2d at 411. They were both in the weight room at the YMCA at the time of the incident. *Id.* at 410. The plaintiffs argued that the YMCA was negligent by allowing Hart access to its facility. *Id.* at 411. While the jury attributed 100% of the fault to Hart, *id.*, the North Dakota Supreme Court explained that the district court was correct when it had the jury compare Hart's intentional act with YMCA's alleged negligence. *Id.* at 418.

■ Just as in *Rodenburg*, the injury in this case would not have occurred but for someone's intentional act of pointing and firing a gun at the victim. However, that

act does not bar a jury from considering any alleged fault of other parties who contributed to the injury. *Rodenburg,* 632 N.W.2d at 418; *see also* N.D. Cent.Code § 32–03.2–02.

The North Dakota Supreme Court has noted that "good arguments can be made for not comparing the fault of a negligent tortfeasor with that of an intentional tortfeasor...." *Rodenburg,* 632 N.W.2d at 418. One such argument is that "any rational juror will apportion the lion's share of the fault to the intentional tortfeasor when instructed to compare the fault of a negligent tortfeasor and an intentional tortfeasor...." *Veazey v. Elmwood Plantation Assocs., Ltd.,* 650 So.2d 712, 719 (La.1994) (cited in *Rodenburg,* 632 N.W.2d at 418); *see also Brandon v. County of Richardson,* 261 Neb. 636, 624 N.W.2d 604, 620 (2001) ("Fact finders are likely to allocate most, if not all, of the damages to the intentional tort-feasor due to the higher degree of social condemnation attached to intentional, as opposed to negligent, torts.") (cited in *Rodenburg,* 632 N.W.2d at 418). Whatever the reason, the North Dakota Legislature chose to compare all fault. *Rodenburg,* 632 N.W.2d at 418. Therefore, the jury in this case will compare Steve's intentional tort with any alleged product liability or negligence on Defendant's part.

## DECISION

Defendant's Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.